# United States Court of Appeals for the Federal Circuit

---

**DONALD A. DIXON,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7032

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 08-1475, Chief Judge Bruce E. Kasold.

---

Decided: February 4, 2014

---

STERLING LEBOEUF, Arnold & Porter, LLP, of Denver, Colorado, argued for claimant-appellant. With him on the brief was THOMAS W. STOEVER, JR.

ALLISON KIDD-MILLER, Senior Trial Counsel, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel were DAVID J. BARRANS, Deputy Assistant General Counsel, and

MARTIE ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before DYK, MAYER, and CHEN, *Circuit Judges.*

MAYER, *Circuit Judge.*

Donald A. Dixon appeals the final judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying his motion to recall the mandate issued in a decision dismissing his appeal as untimely filed. *See Dixon v. Shinseki*, No. 08-1475, 2012 WL 3291861 (Vet. App. Aug. 14, 2012) ("*Equitable Tolling Decision*"). We reverse and remand.

## BACKGROUND

Dixon served in the United States Army from July 1979 until July 1992. He worked as a chemical operations specialist and served in the Persian Gulf, where he was exposed to pyridostigmine, a medication administered to troops to protect them from nerve agents. J.A. 115. Dixon also "encountered smoke from oil fires, diesel, and burning trash," and had "cutaneous exposure [to] diesel and petrochemical fuel." J.A. 115.

In April 2003, Dixon was diagnosed with sarcoid lungs and transverse myelitis, which left him temporarily paralyzed from the waist down. Four months later, he filed a claim with the Department of Veterans Affairs ("VA") seeking service-connected disability benefits for sarcoidosis. He alleged that his "exposure to oil fires and chemicals in Kuwait [was] a major factor" in the development of his illness. J.A. 117.

In a September 2004 rating decision, a VA regional office denied Dixon's claim. On appeal, the Board of Veterans' Appeals ("board") affirmed, concluding that there was "no medical evidence relating [Dixon's] postservice diagnosis of . . . transverse myelitis and sarcoidosis to ser-

vice." J.A. 121. Acting *pro se*, Dixon filed a notice of appeal with the Veterans Court on May 9, 2008, sixty days beyond the 120-day filing deadline specified in 38 U.S.C. § 7266(a). On August 29, 2008, the Veterans Court dismissed Dixon's appeal, concluding that it was "without jurisdiction" to consider the appeal because it had not been filed within the 120-day filing period. J.A. 132.

In *Henderson ex rel. Henderson v. Shinseki*, the Supreme Court held that the 120-day filing deadline for appealing to the Veterans Court is not a jurisdictional requirement. 131 S. Ct. 1197, 1203-06 (2011) ("*Henderson II*"). Instead, section 7266(a)'s time limit is a "quintessential claim-processing rule[]," *id.* at 1203, which was not intended by Congress "to carry the harsh consequences that accompany the jurisdiction tag," *id.* at 1206.

In the wake of *Henderson II*, the Veterans Court issued an order allowing Dixon, and other similarly-situated veterans, to file motions to recall the mandates dismissing their appeals based on principles of equitable tolling. *See Bove v. Shinseki*, 25 Vet. App. 136, 139-45 (2011). Still acting *pro se*, Dixon filed a motion seeking equitable tolling and explaining that he suffered from physical and psychiatric disabilities which prevented him from filing his notice of appeal in a timely manner:

> During the latter part of the year 2007 I missed my deadline due to illness and mental stress. I was having continued respiratory episodes, panic attacks, and secluding myself as much as possible due to PTSD. I was so consumed with being ill and believing I was [dying]. I could not concentrate on myself or issues that needed to be resolved. My records will show that I was having many PTSD, gastrointestinal, respiratory, and gout issues at the time.

J.A. 134.

On July 30, 2012, Dixon filed a supplemental motion stating that during the appeal period he believed that he was "on [his] death bed" and was having many panic attacks related to his "large lymph nodes" which in the next year proved to be a symptom of lymphoma, a form of cancer. J.A. 139. Dixon also submitted a letter from his VA psychiatrist, Gary L. Kielpikowski, M.D., which stated that he had been treating Dixon since 2001 and that Dixon "had severe problems with medical issues and Post Traumatic Stress Disorder during" the period when he was appealing the board's denial of his claim for sarcoidosis. J.A. 137. Kielpikowski explained that Dixon was "unable to attend [to] or focus on the appeal process during the [period from] November 2007 to August 2008." J.A. 137.

On August 14, 2012, the Veterans Court denied Dixon's motion seeking equitable tolling and dismissed his appeal. Although the court acknowledged that Kielpikowski had opined that Dixon could not attend to, or focus on, the appeal process due to his mental and physical infirmities, it determined that Dixon had failed to establish that his untimely filing was "the direct result of his illnesses." *Equitable Tolling Decision*, 2012 WL 3291861, at *1 (citations and internal quotation marks omitted).

On August 28, 2012, Sterling J. LeBoeuf and Thomas W. Stoever, Jr., attorneys with Arnold & Porter LLP, agreed to represent Dixon *pro bono*. They promptly moved for an extension of time to file a motion for reconsideration of the decision denying Dixon's request for equitable tolling. The Veterans Court granted this motion on August 30, 2012, allowing Dixon until October 4, 2012 to file a motion for reconsideration.

On September 5, 2012, LeBoeuf requested a copy of Dixon's claims file from the VA. The VA refused, however, to send him a copy of the file. VA representatives did

offer to make the file available for review at the VA's Denver regional office, but informed LeBoeuf that the earliest available appointment for reviewing the file was October 1, 2012, three days before Dixon's motion for reconsideration was due. On October 1, 2012, Rebecca Golz, a legal assistant who worked with LeBoeuf, visited the VA's Denver office and reviewed Dixon's claims file. Golz alleges, however, that she was monitored by a VA representative during the review process and that she was not allowed "enough time to review the documents thoroughly." J.A. 171. During her review of Dixon's file, Golz selected twenty to thirty documents that she wished to have copied. Although the VA agreed to make copies of these documents, it refused to do so contemporaneously. Golz attempted to give VA officials prepaid Federal Express and UPS shipping labels in order to expedite shipping of the copies she had requested, but they declined to accept them. Although Golz stressed to VA officials that Dixon's motion for reconsideration was due on October 4, 2012, they declined to provide any assurances that the documents would be sent before that date. As of October 4, 2012, the VA had not provided Dixon's attorneys with any of the documents Golz had marked for copying.

The VA also hindered LeBoeuf's efforts to obtain a declaration from Kielpikowski supporting Dixon's motion for reconsideration. Throughout September 2012, LeBoeuf "worked with Mr. Dixon and Dr. Kielpikowski to understand the medical conditions that prevented Mr. Dixon from timely filing his [notice of appeal]." On October 2, 2012, LeBoeuf sent a draft declaration describing these psychiatric and physical conditions to Kielpikowski for review. This declaration stated that in the period between November 2007 and March 2008 Dixon suffered from psychiatric conditions that "rendered him unable to focus on and complete the process of preparing and filing a notice of appeal" and that his "psychiatric and physical conditions directly resulted in his inability to timely file a

notice of appeal with [the Veterans] Court." J.A. 178-79. On the same day that he received the draft declaration, Kielpikowski called LeBoeuf and informed him that he was willing to sign it as soon as counsel for the VA authorized him to do so. Soon thereafter, however, a VA attorney called LeBoeuf and informed him that Kielpikowski would not be permitted to sign the declaration because the VA's *Touhy* regulations precluded him from doing so.[1]

On October 3, 2012, LeBoeuf filed a second motion for an extension of time with the Veterans Court. He explained that "extraordinary circumstances" justified the granting of additional time given that the VA had refused to timely provide him with relevant documents from Dixon's claims file and had unjustifiably prohibited Dixon's "doctor from providing truthful testimony in support of his motion" for reconsideration.

On October 10, 2012, the Veterans Court denied LeBoeuf's motion for an extension of time[2] and entered judgment against Dixon. Citing to Rule 35(e)(1) of its Rules of Practice and Procedure, the court stated that "a motion for reconsideration or panel review must show that the Court has overlooked or misunderstood a point of law or fact." *Dixon v. Shinseki*, No. 08-1475, slip op. at 1 (Vet. App. Oct. 10, 2012) ("*Order Denying an Extension of Time*"). In the court's view, Dixon had no right to "augment[] the record" on motion for reconsideration because such a motion "must be based on the record at the time of

---

[1]   As will be discussed more fully in section III, the VA's *Touhy* regulations are inapplicable where, as here, the VA "is a party" to the proceedings. 38 C.F.R. § 14.801(b)(2)(i).

[2]   The Veterans Court also denied Dixon's motion to file a motion for reconsideration out of time. *See Order Denying an Extension of Time*, slip op. at 2.

the decision upon which reconsideration or panel review is sought." *Id.* Because the court concluded that Dixon had no right to submit medical records from his claims file or a declaration from his VA physician in support of his motion for reconsideration, it determined that he had failed to establish "good cause" for granting an extension of time. *Id.*

Dixon then filed a timely appeal with this court. We have jurisdiction under 38 U.S.C. § 7292.

DISCUSSION

I. Standard of Review

This court's authority to review decisions of the Veterans Court is circumscribed by statute. *Reeves v. Shinseki*, 682 F.3d 988, 992 (Fed. Cir. 2012). While we have jurisdiction to review the Veterans Court's interpretation of statutory and regulatory provisions, we are prohibited, absent a constitutional issue, from reviewing challenges to factual determinations or the application of a statute or regulation to the facts of a particular case. 38 U.S.C. § 7292. "We have recognized, however, that where adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law." *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004); *see also Conley v. Peake*, 543 F.3d 1301, 1304 (Fed. Cir. 2008). We review de novo the legal determinations made by the Veterans Court. *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009).

II. Motions for an Extension of Time

Dixon argues that the Veterans Court abused its discretion in denying his motion for an extension of time given that the VA actively obstructed his attorney's efforts to obtain and review his claims file. In support, he contends that the court's refusal to grant LeBoeuf adequate time to secure copies of relevant medical records is

contrary to this court's decision in *Barrett v. Nicholson,* 466 F.3d 1038 (Fed. Cir. 2006) ("*Barrett II*"), and serves to "reward delay and obstruction by the [VA]." We agree under the circumstances of this case.

"Because many veterans lack the knowledge and resources necessary to locate relevant records, Congress has appropriately placed the burden on the VA to ensure that all relevant service medical records are obtained and fully evaluated." *Moore v. Shinseki*, 555 F.3d 1369, 1374-75 (Fed. Cir. 2009). In *Barrett II*, we explicitly rejected the government's argument that while the VA had a duty to produce records related to the merits of a veteran's disability claim, it was subject to no such obligation with respect to a veteran's motion seeking equitable tolling of the 120-day deadline for appealing to the Veterans Court. 466 F.3d at 1042-44. We explained that "where evidence required to prove a fact is peculiarly within the knowledge and competence of one of the parties, fairness requires that party to bear the burden of coming forward." *Id.* at 1042 (citations and internal quotation marks omitted). Because the VA typically has "superior access to a veteran's [claims] file and the facts bearing on jurisdiction," it has an affirmative obligation "to come forward with" evidence relevant to a veteran's entitlement to equitable tolling "and to develop additional facts uniquely within its competence" on that issue.[3] *Id.* at 1042-43.

---

[3] Although the government acknowledges that the VA is required to produce relevant records from a veteran's claims file during the initial adjudication of a request for equitable tolling, it argues that *Barrett II* imposes no such obligation when a veteran subsequently seeks reconsideration of a decision denying equitable tolling. We find the government's reading of *Barrett II* to be unduly cramped. Nothing in that decision suggests that the government's obligation to produce records relevant to a

Here, however, the VA did not come forward with the evidence in its possession related to Dixon's claim for equitable tolling, but instead obstructed the diligent efforts by LeBoeuf to gain access to Dixon's claims file prior to the October 4, 2012 motion for reconsideration filing deadline set by the Veterans Court. The VA refused to send LeBoeuf a copy of the file, and while it allowed a legal assistant from LeBoeuf's firm to review the file for a limited period of time at its Denver regional office, she was not allowed "enough time to review the documents thoroughly." J.A. 171. Nor was she permitted to make copies of any documents. Furthermore, although VA representatives agreed to copy twenty to thirty documents from the claims file and send them to LeBoeuf, he had not received them by the October 4, 2012 filing deadline.

Given that the VA, despite diligent efforts by LeBoeuf, failed to timely produce relevant documents from Dixon's claims file, and, as discussed below, the Veterans Court was, under the circumstances here, obligated to consider the record, the Veterans Court erred in refusing to grant an extension of time. Although "[t]he Veterans Court has broad discretion to interpret and apply its Rules of Practice and Procedure," *Bastien v. Shinseki*, 599 F.3d 1301, 1307 (Fed. Cir. 2010), we see no reasonable justification for the court's refusal to grant an extension of time here. Where a litigant is unjustifiably denied timely access to pertinent evidence in the possession of the opposing party, fairness dictates that he be granted an extension of time sufficient to allow him to obtain and review such evidence. *See Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 912-13 (Fed. Cir. 2013) (concluding that a district court abused its discretion when it refused to delay proceedings in order to allow a

---

claim for equitable tolling does not apply in the context of a motion for reconsideration.

litigant sufficient time to obtain relevant evidence); *Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1337 (Fed. Cir. 2008) (concluding that a district court abused its discretion in refusing to provide a litigant with adequate time to conduct discovery before ruling on the merits of a claim).

Veterans not infrequently encounter significant difficulties when attempting to obtain pertinent medical records from the VA. *See, e.g.*, *Moore*, 555 F.3d at 1374 (veteran's medical records were "'lost in the bowels' of the National Personnel Records Center" for several years and were located only after the veteran obtained counsel and appealed to this court); *Washington v. Nicholson*, 19 Vet. App. 362, 369 (2005) (veteran's medical records were lost and never located); *Marciniak v. Brown*, 10 Vet. App. 198, 200 (1997), *aff'd sub nom. Marciniak v. West*, 168 F.3d 1322 (Fed. Cir. 1998) (the VA "twice lost" the veteran's claims file). Denying a motion for an extension of time in situations in which the VA runs out the clock, refusing to produce relevant medical evidence until after the deadline for filing a motion for reconsideration has passed, serves only to reward delay and obstruction on the agency's part. *See Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009) (emphasizing that "[t]he VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim").

### III. The Kielpikowski Declaration

Under Veterans Court Rule 35(e), a motion for reconsideration is required to "state the points of law or fact that the party believes the Court has overlooked or misunderstood." Vet. App. R. 35(e)(1). Dixon argues that the Veterans Court misinterpreted this rule when it concluded that it barred him from introducing a declaration from his VA psychiatrist, Kielpikowski, supporting reconsideration of the decision denying his equitable tolling claim.

According to Dixon, introduction of the Kielpikowski declaration comports with Rule 35(e) because it establishes that the Veterans Court "misunderstood" the letter Kielpikowski submitted when Dixon filed his initial motion seeking equitable tolling. Specifically, the declaration is intended to clarify that when Kielpikowski originally stated that Dixon's "severe" psychiatric and physical disabilities rendered him "unable to attend [to] or focus on" the filing of his appeal, J.A. 137, he meant that those conditions "directly resulted in his inability to timely file a notice of appeal with [the Veterans] Court," J.A. 179.

The Veterans Court determined, however, that Dixon was precluded from introducing Kielpikowski's declaration, reasoning that he had no right to "augment[] the record" when submitting his motion for reconsideration.[4] *Order Denying an Extension of Time*, slip op. at 1. In the court's view, Rule 35(e) requires that a motion for reconsideration "be based on the record at the time of the decision upon which reconsideration or panel review is sought." *Id.*

We conclude that the Veterans Court erred to the extent that it concluded that Rule 35(e) imposes an absolute prohibition on the submission of clarifying evidence in support of reconsideration of an equitable tolling decision.

---

[4] An attorney from the VA originally informed LeBoeuf that the VA's *Touhy* regulations precluded Kielpikowski from submitting his declaration. Under certain circumstances, the *Touhy* regulations prevent VA employees from providing expert testimony. 38 C.F.R. § 14.801; *see also Parson v. Chet Morrison Contrs., LLC*, No. 12-0037, 2013 WL 5961099, at *2 (E.D. La. Nov. 7, 2013). Those regulations, however, are inapplicable where, as here, the VA "is a party" to the proceedings. 38 C.F.R. § 14.801(b)(2)(i).

Such an interpretation is contrary to the court's own precedent which recognizes that, under certain circumstances, introduction of clarifying evidence is necessary for "a full and fair consideration of [a veteran's] equitable tolling request, including assessment of all relevant facts." *McCreary v. Nicholson*, 20 Vet. App. 86, 91 (2006); *see also Leonard v. Shinseki*, No. 12-1953, 2013 WL 1200783, at *1 (Vet. App. Mar. 26, 2013) (granting a veteran's motion for reconsideration of a decision denying equitable tolling and allowing him "to submit information or evidence about the circumstances that prevented his timely filing" of a notice of appeal); *Henderson v. Nicholson*, No. 05-0090, 2006 WL 4029376, at *1 (Vet. App. Dec. 4, 2006), *related proceeding at Henderson v. Peake*, 22 Vet. App. 217 (2008), *aff'd sub nom. Henderson v. Shinseki*, 589 F.3d 1201 (Fed. Cir. 2009) (en banc), *rev'd and remanded Henderson II*, 131 S. Ct. 1197 ("*Henderson I*") (granting a veteran's motion for reconsideration and expressly allowing him "to submit additional evidence" supporting his equitable tolling claim); *Ashley v. Derwinski*, 2 Vet. App. 307, 309 (1992) (permitting the government to submit additional evidence, in the form of a "belated" declaration from a VA employee, in support of its motion for reconsideration). As Dixon correctly notes, an interpretation of Rule 35(e) which imposes a blanket prohibition on the introduction of clarifying evidence serves to "punish some of the most vulnerable litigants in the Veterans Court—unrepresented veterans whose illnesses, often related to their military service," prevent them from fully apprehending the prerequisites for establishing entitlement to equitable tolling of section 7266(a)'s filing deadline.

In *Henderson II*, a unanimous Supreme Court rejected the view that the 120-day time limit for appealing to the Veterans Court posed an inflexible jurisdictional barrier. 131 S. Ct. at 1205-06. Although the Court noted that "the time for taking an appeal from a district court to a court

of appeals in a civil case has long been understood to be jurisdictional," *id.* at 1205, it explained that "[t]he contrast between ordinary civil litigation . . . and the system that Congress created for the adjudication of veterans' benefits claims could hardly be more dramatic," *id.* at 1205-06. The Court stated that "[t]he solicitude of Congress for veterans is of long standing. And that solicitude is plainly reflected in the [Veterans' Judicial Review Act], as well as in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." *Id. at* 1205 (citations and internal quotation marks omitted). In the Court's view, "[r]igid jurisdictional treatment of the 120-day period for filing a notice of appeal in the Veterans Court would clash sharply with" the unequivocally pro-claimant scheme created by Congress for reviewing veterans' disability claims. *Id.* at 1206.

A rigid prohibition precluding a veteran from presenting clarifying evidence on his entitlement to equitable tolling would likewise "clash sharply" with the pro-claimant veterans' adjudicatory system. A mechanistic bar on the introduction of clarifying evidence on motion for reconsideration of an equitable tolling decision imposes an exacting and unreasonable standard, one that has no place in an adjudicatory system intended to be "unusually protective of claimants," *id.* at 1204 (citations and internal quotation marks omitted). *See Sneed v. Shinseki*, 737 F.3d 719, 726-28 (Fed. Cir. 2013) (emphasizing that the equitable tolling doctrine should not be applied in a narrow and inflexible manner); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility.").

Many veterans seeking equitable tolling suffer from very significant psychiatric and physical disabilities. *See, e.g., Henderson II*, 131 S. Ct. at 1201 (veteran suffered from paranoid schizophrenia); *Barrett v. Principi*, 363 F.3d 1316, 1317 (Fed. Cir. 2004) ("*Barrett I*") (veteran

suffered from post-traumatic stress disorder and experienced flashbacks and hallucinations). These veterans, moreover, are often unrepresented when they file motions seeking equitable tolling and therefore may have difficulty fully apprehending the prerequisites required to satisfy the Veterans Court's three-part equitable tolling standard.[5] *See Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (en banc) (emphasizing that an unrepresented veteran "should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims" (citations and internal quotation marks omitted)). To impose a harsh and inflexible prohibition against the introduction of clarifying evidence on motion for reconsideration would "be both ironic and inhumane," *Barrett I*, 363 F.3d at 1320, because the very conditions for which a veteran seeks equitable tolling will not infrequently be the same conditions which prevent him from adequately articulating the factual and legal bases of his equitable tolling claim. *See Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991) (considering a supplemental affidavit in support of a claimant's motion for relief from judgment on a decision denying equitable tolling of the deadline for appealing the denial of a Social Security disability claim and explaining that "the very disability that forms all or part of the basis for which the claimant seeks benefits may deprive her of the ability to understand or act upon

---

[5]    The Veterans Court has adopted a three-part test to determine whether equitable tolling based on extraordinary circumstances is warranted: "First, the extraordinary circumstance must be beyond the [veteran's] control. Second, the [veteran] must demonstrate that the untimely filing was a direct result of the extraordinary circumstances. Third, the [veteran] must exercise 'due diligence' in preserving his . . . appellate rights." *Checo v. Shinseki*, 26 Vet. App. 130, 133 (2013) (citations and internal quotation marks omitted).

notice of available administrative procedures" (citations and internal quotation marks omitted)); *Nunnally v. MacCausland*, 996 F.2d 1, 5 (D.C. Cir. 1993) (emphasizing that equitable tolling provisions should not be applied in a manner that is contrary to the "substantive purposes" of a remedial statutory scheme).

Significantly, the Veterans Court's resolution of equitable tolling claims differs markedly—in form and substance—from its resolution of other disability claim issues. As an appellate tribunal, the court generally does not engage in fact-finding, but instead reviews the board's factual determinations for clear error. *See* 38 U.S.C. § 7261; *Washington v. Nicholson*, 19 Vet. App. 362, 366 (2005) ("The Board's determination of service connection is a question of fact that the Court reviews under the 'clearly erroneous' standard of review."). In the equitable tolling context, however, the Veterans Court must "independently weigh the facts" and determine, on a case-by-case basis, whether a veteran has established that a mental or physical disability, or other circumstance beyond his control, prevented him from filing a timely notice of appeal. *Bove*, 25 Vet. App. at 143. Because the period relevant to the equitable tolling inquiry occurs *after* the board has rendered a final decision denying a veteran's disability claim, the Veterans Court must frequently "seek facts outside the record before the Board" in evaluating whether equitable tolling is warranted. *Id.*

Given that the Veterans Court must make equitable tolling determinations without the benefit of a fully developed record from the board—and must frequently make such determinations based on the submissions from unrepresented veterans who suffer from significant psychiatric and physical disabilities—an initial decision denying equitable tolling may be grounded on an incomplete or inaccurate understanding of the extent to which a veteran's disability precluded him from filing a timely notice of appeal. As *McCreary* recognizes, the language

used in the submissions of unrepresented veterans can sometimes be "inartful" and fail to adequately describe the circumstances which prevented the timely filing of a notice of appeal. 20 Vet. App. at 91. Accordingly, in certain circumstances, the introduction of clarifying evidence on motion for reconsideration may be necessary to permit the court to fully evaluate the factual predicate of a veteran's equitable tolling claim. *See Barrett II*, 466 F.3d at 1046 (emphasizing that a veteran is due a "full and fair hearing" on his entitlement to equitable tolling).

This court is precluded from reviewing factual determinations bearing on a veteran's equitable tolling claim. *Leonard v. Gober*, 223 F.3d 1374, 1376 (Fed. Cir. 2000). Accordingly, a motion for reconsideration filed with the Veterans Court generally provides a veteran with his "one shot" to challenge the factual determinations underlying an equitable tolling decision and to identify the "points of . . . fact that [he] believes the Court has overlooked or misunderstood." Vet. App. R. 35(e)(1). Imposing an absolute prohibition on the introduction of clarifying evidence in situations in which such evidence is necessary to establish that the Veterans Court "misunderstood" the facts surrounding the untimely filing of an appeal could therefore deprive a veteran of any meaningful opportunity to correct any factual errors in an equitable tolling decision.

## IV. Motions for Reconsideration

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (citations and internal quotation marks omitted). Motions for reconsideration do not afford litigants the opportunity to take a "second bite at the apple" or to advance arguments that properly should have been presented in an earlier

proceeding. *See Bluebonnet Sav. Bank, F.S.B. v. United States*, 466 F.3d 1349, 1361 (Fed. Cir. 2006); *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n.1 (Fed. Cir. 2005). Likewise, as a general rule, such motions do not provide a vehicle for the introduction of new evidence or affidavits. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797 (Fed. Cir. 1990) (concluding that "an additional [expert] affidavit" filed in support of a motion for reconsideration was "untimely"); *see also Navarro v. Fuji Heavy Indus., Ltd.*, 117 F.3d 1027, 1032 (7th Cir. 1997) (rejecting a litigant's attempt to introduce a supplemental expert report and explaining that if "judges were required to consider evidence newly presented but not newly discovered after judgment, there would be two rounds of evidence in a great many cases"). Nothing in this opinion should be interpreted as departing—in cases outside of the equitable tolling context—from these long-established and salutary precepts.

Even in cases involving reconsideration of a decision denying a veteran's request for equitable tolling, moreover, the introduction of supplementary evidence should be the exception rather than the rule. A claimant should normally be expected to obtain and submit all pertinent evidence at the time he files his equitable tolling request, and only in limited circumstances will the introduction of clarifying evidence be necessary for "a full and fair consideration of [an] equitable tolling request, including assessment of all relevant facts." *McCreary*, 20 Vet. App. at 91. But these are unusual circumstances. When Dixon filed his original request for equitable tolling, he submitted a very brief letter from Kielpikowski which stated that Dixon suffered from "severe" psychiatric problems that rendered him "unable" to file his notice of appeal in a timely manner. J.A. 137. This letter, however, apparently did not contain sufficient detail to enable the Veterans Court to conclude that Dixon's untimely filing was "the direct result of his illnesses." *Equitable Tolling Decision*,

2012 WL 3291861, at *1 (citations and internal quotation marks omitted). Kielpikowski's declaration (which we have held, in section III, should have been considered by the Veterans Court as a clarification of the earlier opinion) provides a more comprehensive picture of Dixon's psychiatric problems, explaining that his mental illnesses, which included post-traumatic stress disorder, severe anxiety, and chronic depression, "rendered him incapable of rational thought or deliberate decision-making." J.A. 178. The declaration specifically concludes, moreover, that these disabilities "directly resulted in [Dixon's] inability to timely file a notice of appeal with [the Veterans] Court." J.A. 179. There is no contrary evidence. Under these circumstances, Dixon should have been permitted to secure and submit his claims file that was not submitted at the time he submitted his motion to recall the mandate.

## V. The Government's Contentions

On appeal, the government contends that "[e]ven if the Veterans Court erred in interpreting Rule 35 as limiting motions for reconsideration . . . to the record at the time of the challenged decision . . . that error was not harmful." We find this argument wholly unpersuasive. As noted previously, a veteran can establish entitlement to equitable tolling by showing that his untimely filing was the "direct result" of physical or psychiatric illness. *Barrett I*, 363 F.3d at 1321. Because Kielpikowski's declaration clarifies that Dixon's psychiatric disabilities "directly resulted in his inability to timely file a notice of appeal with [the Veterans] Court," J.A. 179, it is not only highly relevant, but indeed could prove outcome determinative, on the issue of whether equitable tolling is warranted.[6] *See Wagner v. United States*, 365 F.3d 1358,

---

[6]    As we have previously recognized, a VA psychiatrist who has treated a veteran over an extended period of

1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable . . . we will not speculate as to what the outcome might have been had the error not occurred.").

The government further contends that the Veterans Court properly rejected Dixon's equitable tolling claim because there was an "inherent inconsistency" in Kielpikowski's original letter which stated that Dixon's severe physical and psychiatric disabilities rendered him "unable to attend [to] or focus on" the filing of his appeal, J.A. 137. In the government's view, the fact that Dixon was ultimately able to file a notice of appeal with the Veterans Court, albeit an untimely one, demonstrates that he was capable of filing a timely notice of appeal during the "period of [his] alleged incapacity." We find this reasoning unconvincing. The fact that a veteran, despite severe physical or psychiatric disabilities, manages to file an untimely notice of appeal does not mean that those disabilities did not impede his ability to submit his appeal at an earlier date. The equitable tolling doctrine would be rendered a virtual nullity if the submission of an

---

time is often "supremely qualified to make determinations of mental incapacity." *Barrett II*, 466 F.3d at 1044; *see also Barrett I*, 363 F.3d at 1320 (emphasizing that the VA "employs a host of medical professionals" and is "uniquely qualified to facilitate the diagnosis of troubled claimants"). Here, because Kielpikowski had treated Dixon since 2001, he was presumably highly qualified to provide an informed opinion on the extent to which Dixon's psychiatric and physical disabilities impeded his ability to file a notice of appeal within the 120-day filing period. *See Golden v. Shinseki*, No. 04-1385, 2012 WL 1765439, at *2 (Vet. App. May 18, 2012) (granting a veteran's equitable tolling request and noting that "a VA regional office found her depressive condition to be 100% disabling").

untimely notice of appeal were deemed sufficient to establish that a veteran had the capacity to file within the 120-day statutory period.

CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed and the case is remanded for further proceedings consistent with this opinion.

COSTS

Dixon shall have his costs.

**REVERSED AND REMANDED**