MAYER, Circuit Judge,
dissenting-in-part.
I agree that the United States Court of Appeals for Veterans Claims (“Veterans Court”) erred in failing to apply the “stop-clock” approach to equitable tolling and in dismissing Cherise Checo’s appeal as untimely. I disagree, however, with the conclusion that the Veterans Court has the authority to routinely raise, on its own initiative, the statute of limitations defense on behalf of the Secretary of Veterans Affairs (“Secretary”). “In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.” Greenlaw v. United States, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). The Veterans Court’s regular practice of addressing, sua sponte, the question of whether a veteran’s appeal is timely filed is contrary to the Supreme Court’s admonition that a court should independently consider a statute of limitations defense only “in exceptional cases.” Wood v. Milyard, - U.S.-, 132 S.Ct. 1826, 1834, 182 L.Ed.2d 733 (2012). Regularly raising an affirmative defense on behalf of the Secretary creates the appearance that the court functions not as a “neutral arbiter,” Greenlaw, 554 U.S. at 243, 128 S.Ct. 2559 but instead as a mere appendage of the Department of Veterans Affairs (“VA”), as even the Veterans Court once recognized. See MacWhorter v. Derwinski, 2 Vet.App. 133, 135 (1992) (“[F]er-reting out ... implicit or possible contentions” on behalf of the Secretary “would be the antithesis of the adversarial judicial appellate process.”); see also Hodge v. West, 155 F.3d 1356, 1363 (Fed.Cir.1998) (“[I]n the context of veterans’ benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight.”).
Of course, some filing deadlines are jurisdictional. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-39, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (“Sand & Gravel ”) (concluding that compliance with the time limit for filing suit in the United States Court of Federal Claims is a jurisdictional requirement); Bowles v. Russell, 551 U.S. 205, 209, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (concluding that the time limit for appealing from a district court to a court of appeals is “mandatory and jurisdictional” (citations and internal quotation marks omitted)). Because “federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction,” they are required to assure compliance with jurisdictional filing deadlines, even in situations in which the timeliness question has not been raised by the parties. Henderson ex rel. Henderson v. Shinseki, - U.S.-, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); see Arbaugh v. Y&H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (“The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own *1383 initiative, at any stage in the litigation, even after trial and the entry of judgment.” (citation omitted)).
But other filing deadlines are “claims-processing rules” which do not limit a court’s jurisdiction. Dolan v. United States, 560 U.S. 605, 610, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010). Because such claims-processing rules only afford relief to the party properly raising them, they can be waived or forfeited. See id. (“Unless a party points out to the court that another litigant has missed [a non-jurisdictional] deadline, the party forfeits the deadline’s protection.”); Sand & Gravel, 552 U.S. at 133, 128 S.Ct. 750 (“[T]he law typically treats a limitations defense as an affirmative defense ... subject to rules of forfeiture and waiver.”). Furthermore, while an appellate court has discretion to address a non-jurisdictional limitations defense on its own initiative, it “should reserve that authority for use in exceptional cases,” Wood, 132 S.Ct. at 1834, which surely would not include the situation here or, for example, when a veteran has an incapacitating injury or illness.
The 120-day time limit for appealing to the Veterans Court set out in 38 U.S.C. § 7266(a) is not a jurisdictional prerequisite, but is instead a “quintessential claim-processing rule[].” Henderson, 131 S.Ct. at 1203. Accordingly, the Veterans Court erred when it: (1) concluded that the statute of limitations defense could not be waived by the Secretary; and (2) directed its clerk of court to screen all appeals for timeliness and to issue show cause orders requiring veterans to demonstrate why any appeal filed outside the 120-day filing period should not be dismissed. See Bove v. Shinseki, 25 Vet.App. 136, 140-43 (2011). “[A] federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system.” Wood, 132 S.Ct. at 1833. Instead, the Supreme Court has repeatedly cautioned that a court can sua sponte address an affirmative defense only in a narrow set of circumstances. See id. at 1834 (concluding that an appellate court abused its discretion by raising a timeliness defense on its own initiative); Greenlaw, 554 U.S. at 244, 128 S.Ct. 2559 (Because our justice “system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief,” courts “normally decide only questions presented by the parties.” (citations and internal quotation marks omitted)); Arizona v. California, 530 U.S. 392, 413, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (Because it “erodfes] the principle of party presentation so basic to our system of adjudication,” courts must be “cautious” about raising an affirmative defense sua sponte.). Day v. McDonough, 547 U.S. 198, 206-10, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006), relied upon by the Veterans Court, is not to the contrary. As the Supreme Court explained in Wood, Day stands for the limited proposition that a court has discretion “to consider a forfeited habeas defense when extraordinary circumstances so warrant.” 132 S.Ct. at 1833 (emphasis added).
No extraordinary circumstances justify the Veterans Court’s regular practice of raising the question of whether a veteran’s appeal was timely filed. In Bove, the Veterans Court concluded that sua sponte consideration of the timeliness issue in every appeal submitted outside the 120-day filing period is required because “holding] that the Secretary could affirmatively or by forfeiture waive the 120-day filing period would cede some control of the Court’s docket to the Secretary and permit arbitrary selection of which veteran’s late filing he finds worthy of waiver, a process devoid of consistency, procedural regularity, and effective judicial review.” Bove, 25 *1384 Vet.App. at 141.* The Veterans Court, however, provided no factual support for its rather far-fetched contention that the Secretary might attempt to gain “control” over its docket. Nor could the court cite to a single instance in which the Secretary made an “arbitrary” decision to forego reliance on a timeliness defense in order to defend an appeal on the merits. To the contrary, the Secretary typically has every incentive to promptly raise a statute of limitations defense given that it can frequently provide an expeditious means of resolving an appeal. See Eberhart v. United States, 546 U.S. 12, 18, 126 S.Ct. 408, 163 L.Ed.2d 14 (2005) (noting that “the Government is unlikely to miss timeliness defects very often”). In the rare instances in which the Secretary elects not to pursue a statute of limitations defense— or simply inadvertently fails to raise it— there is no reason that the defense should not be deemed waived. See Kontrick v. Ryan, 540 U.S. 443, 456, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (“[A] claim-processing rule ... can ... be forfeited if the party asserting the rule waits too long to raise the point”).
The Veterans Court’s practice of sua sponte addressing the timeliness issue is particularly troubling given that the court functions as part of a uniquely pro-claimant adjudicatory scheme. See Henderson, 131 S.Ct. at 1205 (“The solicitude of Congress for veterans is of long standing. And that solicitude is plainly reflected in the [Veterans’ Judicial Review Act], as well as in subsequent laws that place a thumb on the scale in the veteran’s favor in the course of administrative and judicial review of VA decisions.” (citations and internal quotation marks omitted)). “[I]t was for the purpose of ensuring that veterans were treated fairly by the government and to see that all veterans entitled to benefits received them that Congress provided for judicial review.” Barrett v. Nicholson, 466 F.3d 1038, 1044 (Fed.Cir. 2006). The Veterans Court’s practice of routinely raising an affirmative defense on behalf of the Secretary is wholly out of place in an adjudicatory system intended by Congress to be “unusually protective of claimants.” Henderson, 131 S.Ct. at 1204 (citations and internal quotation marks omitted).
Many veterans who seek redress from the Veterans Court suffer from significant service-connected physical and psychiatric disabilities. See Dixon v. Shinseki, 741 F.3d 1367, 1376 (Fed.Cir.2014). Such veterans, moreover, are often unrepresented when they file their notices of appeal. See id. The Secretary, by contrast, is represented by a regiment of skilled and experienced attorneys. Given that the Secretary generally has a clear advantage — in terms of resources and experience — it defies understanding why the Veterans Court believes it necessary to routinely raise the timeliness defense on his behalf. See Greenlaw, 554 U.S. at 244, 128 S.Ct. 2559 (“Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel *1385 for the United States, the richest, most powerful, and best represented litigant to appear before us.” (citations and internal quotation marks omitted)).
“The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one.” United States v. Burke, 504 U.S. 229, 246, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring in the judgment). Before 1988, veterans who were denied disability compensation generally had no recourse to the courts. See H.R.Rep. No. 100-963, at 26 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5808. The goal of Congress in creating the Veterans Court was to provide review by a tribunal “independent” of the VA. Id. This objective is frustrated when the Veterans Court steps into the shoes of the Secretary and routinely raises an affirmative defense on his behalf.

 The Veterans Court also stated that the goal of promoting “judicial efficiency” justified requiring its clerk of court to screen all appeals for timeliness. Bove, 25 Vet.App. at 142. The court failed to cite any evidence, however, that requiring its clerk to raise the timeliness issue, as opposed to allowing the Secretary to raise it, would significantly expedite the processing of appeals. Even more fundamentally, “[a]ny interest that a court generally possesses in the enforcement of a statute of limitations defense ... ordinarily falls short of that necessary to outweigh the benefits derived from adhering to the adversarial process, and requiring that a defendant either raise the defense of statute of limitations or waive its protection.” Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir.2006) (footnote omitted).