# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
John C. Grimberg Co., Inc. ) ASBCA Nos. 58791, 59717
)
Under Contract No. W912DR-09-C-0038 )

APPEARANCES FOR THE APPELLANT:     Edward J. Parrott, Esq.
                                   Stephanie M. Rochel, Esq.
                                     Watt, Tieder, Hoffar & Fitzgerald, LLP
                                     McLean, VA

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                     Engineer Chief Trial Attorney
                                   Scott C. Seufert, Esq.
                                   David B. Jerger, Esq.
                                     Engineer Trial Attorneys
                                     U.S. Army Engineer District, Baltimore

## OPINION BY ADMINISTRATIVE JUDGE PEACOCK
## ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION

The government timely moves for reconsideration of our decision in ASBCA No. 58791 and the relevant portion of ASBCA No. 59717, as issued in *John C. Grimberg Co., Inc.*, ASBCA No. 58791 *et al.*, 2018 WL 6113411 (Oct. 25, 2018), contending that the Board erred in concluding that appellant encountered a Type I differing site condition (DSC). Familiarity with that decision is presumed. The government maintains that appellant failed to reasonably interpret contractual indications of the quantity of incompetent rock that would be encountered in drilling into the Karst prevalent at the site. Therefore, according to the government, appellant failed to establish all requisite elements essential to establish a DSC and satisfy its burden of proving entitlement. The government also challenges our use of a "jury verdict" approach in evaluating the quantity of rock drilling reasonably indicated and developing our "allowance" adjusting appellant's estimate to reflect the results of our evaluation, emphasizing that quantum was not an issue.

Standards for resolving a motion for reconsideration are well established. Such motions do not provide a party an opportunity to reargue issues that were previously raised and decided. *Precision Standard, Inc.*, ASBCA No. 58135, 16-1 BCA ¶ 36,504 at 177,860. A motion for reconsideration does not provide a litigant a "second bite at the apple" or the opportunity to advance arguments that properly should have been presented in an earlier proceeding. *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014). We

grant motions for reconsideration "if we have made a genuine oversight that affects the outcome of the appeal." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,146 at 180,841. This is not such a case. The request for reconsideration is denied.

The government continues to place great emphasis on a series of borings 300 to 500 feet away from the site of the Biolab foundation, while ignoring more proximate and relevant borings, in particular DH-11 and DH-12, aligned on the site. Moreover, the government's analysis thereof was refuted. Appellant persuasively established that the actual Biolab subsurface drilling conditions were far worse (and different) than one would predict even based on the USAMRIID borings. JCG actually drilled through approximately 3.75 times the amount of rock that could have been anticipated based on the USAMRIID borings. *Grimberg*, 2018 WL 6113411 at 29.

In addition, the government's subsurface exploration and resultant boring data provided to offerors in the solicitation were flawed and deficient. They omitted *specific* data directly at the site where the drilling for the Biolab foundation would occur. Despite the emphasis on the highly variable nature of the karst *generally* in the solicitation's Geotechnical Report, that report failed to take that emphasis "to heart" and provide meaningful, *specific* boring data (other than DH-11 and DH-12) at, or reasonably proximate to, the critical drilling site. The greater the variability of the subsurface, the greater the need for the latter data. In short, the government failed to put into practice what it preached. Moreover, despite the considerable variability of subsurface rock conditions inherent in Karst topography, the contract contained no provisions for pricing extreme variations in the quantity of rock drilling required. Although there was a plethora of generalized (often repetitive) information concerning Karst variability, contributing significantly to development of our "allowance," there was a paucity of proximate, site-specific boring data, one factor contributing to our sustention of the appeal.

With respect to developing our "allowance," we exercised our discretion and best judgment after careful consideration and analysis of the entire record with emphasis on particularly relevant findings identified in the principal opinion. That judgment, based as it was on numerous factors and findings necessarily was in the nature of a "jury verdict." The government now questions our judgment relying on essentially the same arguments that it made previously. We decline to revisit in detail the complete rationale for our determination (*see, e.g.*, *Grimberg*, 2018 WL 6113411 at 30). Although "jury verdict" determinations arise most commonly in the context of quantum determinations of final dollar amounts, there is nothing that prohibits or inhibits Board judges from performing similar equitable analyses in an "entitlement" context. Obviously, our allowance also provides guidance and has significant implications for quantum negotiations on remand. Rather than remand issues related to development and amount of the allowance for quantum negotiations, we deemed it more efficient to "jury verdict"

2

the allowance given the great disparity in the views of the parties as to what was reasonably indicated in the contract regarding subsurface rock.

The primary contentions originally raised by the parties and considered by us in reaching our conclusions centered on whether an "allowance" constituted a disfavored "contingency." The concept and necessity of developing an "allowance" recognizing the extensive variability of rock was a primary tenet of the Corps' position. We essentially agreed with the government's position that such an allowance was a valid distinction with critical differences in the context of this case. *Grimberg*, 2018 WL 6113411 at 30-31. On reconsideration, the Corps now argues that the Board should refrain from developing its own "allowance," in legal parlance denominated a "jury verdict," based on the same data furnished to offerors, supplemented by detailed testimony, expert analyses, and the complete documentary record developed at trial. The obvious relevance of our "allowance" to quantum phase negotiations illustrates that any line between "entitlement" and quantum "jury verdicts" is blurred and indistinct at best. There was no more reliable method of developing a precise estimate of the amount that should have been anticipated. Moreover, the Board considered numerous pertinent countervailing factors and the entire record in rendering its best judgment to fairly and reasonably approximate what it considered to be the appropriate "allowance" with patent implications for quantum phase negotiations on remand. *Cf. Grumman Aerospace Corp. v. Wynn*, 497 F.3d 1350, 1358 (Fed. Cir. 2007) (citations omitted); *see also Great Lakes Dredge and Dock Co.*, ENG BCA No. 5606, 91-1 BCA ¶ 23,613 at 118,339 (and cases cited). In appropriate cases such as this, our conclusory assessments are essential to rendering a fair judgment after careful scrutiny of pertinent factual considerations bearing on the issues in dispute, regardless of whether they may be classifiable as "entitlement-related" evaluations. Given the extensive poor rock encountered by appellant, rejection of appellant's claim for failure to reasonably interpret contractual indications as a whole was unfair and inequitable. On the other hand, failure to develop our "allowance" adjusting appellant's bid to reflect what the Board considered to be an amount reasonably indicated would have been unfair to the government. An "all or nothing" resolution of this case would have been overly legalistic and unjust.

3

The motion for reconsideration is denied.

Dated: January 2, 2019

ROBERT T. PEACOCK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58791, 59717, Appeals of John C. Grimberg Co., Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals