ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| CJW Contractors, Inc. | ) ASBCA No. 63228 |
| | ) |
| Under Contract No. N40085-16-D-0300 | ) |

APPEARANCES FOR THE APPELLANT:    Douglas L. Patin, Esq.
    Erik M. Coon, Esq.
     Bradley Arant Boult Cummings LLP
     Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
     Navy Chief Trial Attorney
    Robyn L. Hamady, Esq.
     Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD
ON THE NAVY'S MOTION FOR RECONSIDERATION

This appeal involves a dispute regarding the replacement of heating systems in Buildings 3, 4, and 5 at Naval Support Activity Mechanicsburg in Pennsylvania. CJW Contractors, Inc. (CJW) sought to recover costs associated with installing 52 new steel I beams to support hydronic piping in Building 5, alleging that it was permissible under the contract to use the building's existing steel W and S roof beams as support for the pipes. On January 23, 2023, the Board issued a decision sustaining CJW's appeal pursuant to Board Rules 11 and 12.3. *CJW Contractors, Inc.*, ASBCA No. 63228, 23-1 BCA ¶ 38,272 (*CJW I*). In sustaining CJW's appeal, the Board found that CJW's interpretation of the contract's specifications and drawings was reasonable and that the contract contained latent ambiguities to be construed against the Navy. *Id.* at 185,824-26. On February 22, 2023, the Navy filed a motion for reconsideration of the Board's decision. We deny the Navy's motion.

DECISION

*Standard of Review*

Board Rule 20 allows either party to file a motion for reconsideration of a Board decision. In deciding on a motion for reconsideration, the Board will determine "whether there is newly discovered evidence or whether there were mistakes in the decision's findings of fact, or errors of law." *ADT Constr. Grp., Inc. by Timothy S. Cory*, ASBCA No. 55358, 14-1 BCA ¶ 35,508 at 174,041; *see also CDM Constructors,*

*Inc.*, ASBCA No. 60454 *et al.*, 19-1 BCA 37,332 at 181,556 (citing *Green Valley Co.*, ASBCA No. 61275, 18-1 BCA ¶ 37,044 at 180,329).  Motions for reconsideration are "not the place to present arguments previously made and rejected," *Assist Consultants Inc.*, ASBCA Nos. 61525, 62090, 21-1 BCA ¶ 37,946 at 184,297, and "do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (citing *Bluebonnet Sav. Bank, F.S.B. v. United States*, 466 F.3d 1349, 1361 (Fed. Cir. 2006); *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n.1 (Fed. Cir. 2005)).  Accordingly, the burden is on the moving party to present "a compelling reason why the Board should modify its decision." *Philips Lighting N. Am. Corp.*, ASBCA No. 61769 *et al.*, 21-1 BCA ¶ 37,821 at 183,647.

*The Navy Has Failed to Present a Valid Basis for the Board to Modify its Original Decision*

In its motion for reconsideration, the Navy alleges that the Board erred in finding that CJW's interpretation of the contract was reasonable primarily by rehashing legal positions already argued to the Board (gov't mot. at 1).  The Navy makes four contentions in support of reconsideration.  First, the Navy argues that CJW's interpretation was erroneous as a matter of law because it failed to consider the contract as a whole (gov't mot. at 3-7; *see also* gov't br. at 3-7).  Second, the Navy contends that the contract unambiguously supports its own interpretation, and that if any ambiguities exist, they are patent and thus imposed a duty of inquiry on CJW (gov't mot. at 9-11; *see also* gov't br. at 8-11).  Third, the Navy asserts that Federal Acquisition Regulation (FAR) 52.236-21, SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997) and Defense Federal Acquisition Regulation Supplement (DFARS) 252.236-7001, CONTRACT DRAWINGS AND SPECIFCATIONS resolve any ambiguities in the contract in the Navy's favor (gov't mot. at 12; *see also* gov't. br. at 11-12).  Finally—in its only novel argument—the Navy mischaracterizes the Board's analysis by claiming that the Board's decision imposes a new requirement of contract interpretation that drawings cross-reference each other in order to be considered part of the contract (gov't mot. at 8-9).  We address each of these arguments in turn.

*The Navy Fails to Demonstrate That CJW's Interpretation Was Erroneous as a Matter of Law*

The Navy maintains that the Board erroneously concluded as a matter of law that CJW "reasonably interpreted the drawings for Building 5 to indicate that the pipe hangers would be supported by the exiting steel W and S roof beams using standard pipe hanger clamps" (gov't mot. at 3-7 (citing *CJW I*, 23-1 BCA ¶ 38,272 at 185,825)).  Specifically, the Navy contends that CJW's interpretation is incompatible with Specification Section 23 05 15 relating to maximum spacing between pipe supports

(gov't mot. at 3-4; *see also* gov't br. at 9-10) and FAR 52.236-21 (gov't mot. at 5; *see also* gov't br. at 11-12) and that CJW read Drawing S-501 out of the contract (gov't mot. at 6-7; *see also* gov't br. at 4-7). In addition to merely rehashing legal positions previously presented to the Board (*see* gov't br. at 3-10), this argument fails on the merits.

First, while the Navy is correct that Specification Section 23 05 15 incorporates MSS SP-58[1] standards, this does not invalidate CJW's interpretation of the contract because CJW could still have supported the pipe structure under and parallel to the existing steel W and S beams with appropriately spaced clamps in compliance with MSS SP-58's standards. As the Board found, CJW never intended to support the hydronic pipe between existing roof beams, but instead intended to hang the piping parallel to the bottom chord of the existing steel W and S beams, which could have been done in compliance with MSS SP-58. *See CJW I*, 23-1 BCA ¶ 38,272 at 185,822 (findings 39 (Navy structural engineer stating he did "not see an issue of supporting the pipe from the bottom chord of the truss"), 41 (Navy Defense Logistics Agency Support employee determined that "CJW's alternate pipe hanger detail attached to the bottom chord of truss with clamps rather than as illustrated in contract drawing is acceptable.")). In fact, the Navy was fully aware of CJW's intention, and rejected the design not because it violated the contract's specifications, but simply because the design would have reduced overhead clearance. *CJW I*, 23-1 BCA ¶ 38,272 at 185,822 (finding 39). Accordingly, Specification Section 23 05 15 and MSS SP-58 do not provide a valid basis for the Board to modify its decision. *See Philips Lighting*, 21-1 BCA ¶ 37,821 at 183,647.

Second, as the Board found in *CJW I*, FAR 52.236-21 is inapplicable to the case at hand. FAR 52.236-21 provides that information "shown on the drawings and not mentioned in the specifications [] shall be of like effect as if shown or mentioned in both." However, as the Board determined, detail 5 on Drawing S-501 only refers to "W6x15 SPANNING BETWEEN ROOF BEAM," but provides no indication as to

---

[1] The Manufacturers Standardization Society of the Valve and Fittings Industry (MSS):

> is a non-profit technical association organized for development and improvement of industry, national and international codes and standards for Valves, Valve Actuators, Valve Modifications, Pipe Fittings, Flanges, Pipe Hangers and Supports, and Associated Seals. Since its establishment in 1924, MSS has been dedicated to developing standards for national and global applications, in cooperation with other standardizing bodies and regulatory authorities. MSS is an American National Standards Institute (ANSI)-accredited standards developer.

(App. supp. R4, tab 41 at 115).

whether the beams are existing or required.  *CJW I*, 23-1 BCA ¶ 38,272 at 185,825.
Furthermore, Detail 3 on Mechanical M-502 provided clear reference for pipe support
to be "supported from structure," which the Board found could be reasonably
interpreted to include existing W or S beams.  The specifications provided clear pipe
hangar support details to do so.  (R4, Tab 6c at GOV0158)

Third, neither the Board nor CJW read Drawing S-501 out of the contract.  As
the Board determined in *CJW I*, detail 5 on Drawing S-501 did not unambiguously
require the installation of steel I beams in Building 5.  The structural steel specifications
for Buildings 3 and 4 included requirements for every steel part, ranging from structural
steel beams and pipes all the way down to steel bolts, nuts, and washers.  *CJW I*, 23-1
BCA ¶ 38,272 at 185,820 (finding 12).  No such list was included for Building 5.  *Id.*
Additionally, detail 5 was never referenced in Building 5's mechanical drawings nor on
Drawing S-101.  Moreover, by the Navy's own admission, "[t]here is no indication that
[Drawing S-101] is intended to convey other heating system component information
beyond the air handling equipment structural support" (App. supp. R4, tab 34
at GOVPROD0038).

### Any Ambiguities in the Contract Were Latent and Correctly Interpreted Against the Navy

The Navy asserts that if any ambiguities in the contract existed, they were
patent and thus imposed a duty of inquiry on CJW (gov't mot. at 9-11).  Additionally,
the Navy contends that FAR 52.236-21 and DFARS 252.236-7001 resolve any
ambiguities in the contract in favor of the Navy (gov't mot. at12).  In addition to
merely rehashing arguments previously presented to the Board (*see* gov't br. at 8-12),
these contentions fail on the merits.

It is a well-settled rule of contract interpretation that latently ambiguous
contracts are to be construed against the drafter—in this case, the Navy.  *See, e.g.*,
*Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 751.
However, if the ambiguity is "sufficiently glaring to trigger" a reasonable contractor to
inquire before submitting a bid—a patent ambiguity—the ambiguity is to be construed
against the contractor.  *See, e.g.*, *Certified Constr. Co. of Ky.*, ASBCA No. 58782,
15-1 BCA ¶ 36,068 at 176,132; *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed.
Cir. 2004).

As discussed above, unlike the specifications for Buildings 3 and 4 (which
explicitly called for the installation of steel I beams), Building 5's specifications only
referenced steel W and S beams and made no mention whatsoever of steel I beams.
*CJW I*, 23-1 BCA ¶ 38,272 at 185,826.  Drawing S-101—the only drawing depicting
Building 5's roof structure—made no reference to steel I beams.  *Id.*  As the Board found,
the only reference to steel I beams was buried in detail 5 of Drawing S-501---hardly a

4

detail "sufficiently glaring to trigger" CJW to inquire before submitting its bid for the project. *Id.*; *Certified Constr. Co.*, 15-1 BCA ¶ 36,068 at 176,132. Additionally, as the Board determined in *CJW I*, FAR 52.236-21[2] and DFARS 252.235-7001 are inapplicable towards resolving any ambiguities here because, as the Board previously determined, there was no omitted detail—CJW's reliance on detail 3 on Drawing M-502 was reasonable. *CJW I*, 23-1 BCA ¶ 3,272 at 185,826. Moreover, the steel I beams were not "manifestly necessary" to the project as the only means of pipe support—as discussed above, the Navy's reasoning for rejecting the use of detail 3 was merely to accommodate its preference for building overhead clearance, not because it violated the contract's specifications. Accordingly, any ambiguities in the contract were latent and properly construed against the Navy. *Metric Constructors*, 169 F.3d at 751. The Navy knew precisely how many steel beams were required for the project and was fully aware of the potential for confusion (*see* Lefin decl. ¶ 26 ("A decision was made during the design not to call out supplementary support steel (i.e. W6x15 beams at issue in this appeal) on drawing S-101 because a contractor could construe the W6x15 beams as already in existence . . . .")) and easily could have made this requirement clearer.

*The Board's Ruling Did Not Declare a New Rule of Contract Interpretation*

Finally, the Navy argues that the Board's decision "essentially declar[es] a new rule of contract interpretation: that drawings must cross-reference each other for both to be considered part of the contract" (gov't mot. at 8-9). In addition to this argument being a mischaracterization of the Board's finding, it fails on the merits. The Board declared no such rule in determining that CJW's interpretation of the contract was reasonable. As discussed above, neither the Board nor CJW read Drawing S-501 out of the contract. As the Board found, construing the contract as a whole does not reveal an unambiguous requirement to furnish and install 52 steel I beams in Building 5. *CJW I*, 23-1 BCA ¶ 38,272 at 185,824-25. The Board determined that CJW's interpretation was reasonable due to the contract's inconsistent and conflicting design details between detail 3 on Drawing M-502 and detail 5 on Drawing S-501 and because of the lack of a structural steel specification section—or even any mention of steel I beams in Building 5's specifications for that matter. *Id.* at 185,825. As discussed in *CJW I*, there was no logical reason for CJW to refer to Drawing S-501 to make the determination that 52 steel I beams were required given the lack of both a cross reference on Drawing M-502 and a structural steel specification. *Id.* at 185,821 (finding 32), 185,825. Furthermore, while the Navy frames this contention as a novel argument, it essentially regurgitates its claim that CJW's interpretation failed to consider the contract as a whole (gov't mot. at 8-9; *see also* gov't br. at 3-10), which the Board already rejected. *CJW I*, 23-1 BCA ¶ 38,272 at 185,824-25. As discussed

---

[2] FAR 52.236-21 provides, in relevant part, that information "shown on the drawings and not mentioned in the specifications[] shall be of like effect as if shown or mentioned in both."

above, a motion to reconsider is not the place to present arguments previously decided by the Board. *Dixon*, 741 F.3d at 1378; *Assist Consultants*, 21-1 BCA ¶ 37,956 at 184,297.

<u>CONCLUSION</u>

For the foregoing reasons, the Navy's motion is denied.

Dated: July 17, 2023

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63228, Appeal of CJW Contractors Inc., rendered in conformance with the Board's Charter.

Dated: July 17, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals