ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Sauer Incorporated | ) ASBCA No. 62395 |
| | ) |
| Under Contract No. W91278-07-D-0030 | ) |

APPEARANCE FOR THE APPELLANT:  Gina P. Grimsley, Esq.
             Counsel

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
             Engineer Chief Trial Attorney
             Laura J. Arnett, Esq.
             Engineer Trial Attorney
             U.S. Army Engineer District, Savannah

OPINION BY ADMINISTRATIVE JUDGE STINSON ON
GOVERNMENT'S MOTION FOR RECONSIDERATION

The government requests reconsideration of our April 16, 2021, decision denying the government's motion for summary judgment and granting, in part, the cross-motion for summary judgment filed by appellant Sauer Inc. (Sauer). *Sauer, Inc.*, ASBCA No. 62395, 21-1 BCA ¶ 37,845. Sauer appealed the denial of its claim challenging the government's assessment of liquidated damages, based upon appellant's substantial completion of the Task Order. We granted appellant's motion, in part, based upon appellant's completion of Phases I and II of the Task Order. Appellant's motion was denied, in part, due to material issues of fact regarding substantial completion of Phase III of the Task Order, as well as issues regarding proper apportionment of the liquidated damages rate. Familiarity with that decision is presumed. For the reasons stated below, the government's motion for reconsideration is denied.

DISCUSSION

"Motions for reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014). "But if we made mistakes in our findings of fact or conclusions of law, or by failing to consider an appropriate matter, reconsideration may be appropriate." *Supreme Foodservice GMBH*, ASBCA No. 57884 *et al.*, 20-1 BCA ¶ 37,716 at 183,090 (citation omitted).

I. *The Government's Contentions*

The government alleges four errors in our decision:

> I.  The Board mistakenly concluded that it possesses jurisdiction to consider the reasonableness and enforceability of the liquidated damages (LD) rate incorporated into the contract.
>
> II.  The Board failed to appreciate that Sauer waived any argument as to the reasonableness and enforceability of the LD rate incorporated into the contract.
>
> III.  The Board erred when it concluded, as a matter of law, that the LD rate is unenforceable.
>
> IV.  The Board erred in re-writing the contract to adopt phased LDs when the parties never agreed to any such provision.

(Gov't mot. at 2)

II. *Reasonableness and Enforceability of the Liquidated Damages Rate*

The government's first assignment of error is based upon the suggestion that we made a determination regarding the "reasonableness and enforceability" of the specific liquidated damages rate incorporated in the task order.[1]  The government's argument is based upon a false premise.  Our decision did not address, let alone determine, whether the actual liquidated damages rate imposed by the task order was reasonable, nor did we decide whether we had jurisdiction to determine the reasonableness of the rate.  Our decision held, in the first instance, that the government had failed to meet its burden of proof to establish the propriety of imposing liquidated damages under the circumstances of this appeal, based upon Board precedent holding that assessment of the full amount of

---

[1] In its reply brief filed in support of its motion for summary judgment, the government argued that "Sauer's certified claim dated 6 September 2019 does not raise the issue of the reasonableness of the liquidated damages rate," and "does not question the rate, how it was calculated, or whether it was reasonable in light of the phased nature of the project" (gov't reply at 7).  The government argued also that appellant's "claim does not assert any facts regarding the rate which would put the government on notice that the reasonableness of the rate or how it was calculated was in dispute," and that "Sauer's claim challenging the liquidated damages rate presents a materially different factual and legal theory of relief."  *Id*.

daily liquidated damages after substantial completion of the first two phases of a contract is unenforceable as a penalty. *Sauer*, 21-1 BCA ¶ 37,845 at 183,757 (citing *Dick Pacific Constr. Co.*, ASBCA No. 57675 *et al.*, 16-1 BCA ¶ 36,196 at 176,641).

The government's argument on reconsideration ignores the statement in our opinion which provided "[o]ur decision on the parties' cross-motions for summary judgment turns not on the reasonableness of the liquidated damages rate as established by the government pre-award (nor are we able to decide that factual dispute on summary judgment), but, rather, on the government's failure to apportion its liquidated damages at the time it assessed those damages." *Sauer*, 21-1 BCA ¶ 37,845 at 183,759-60. As to the issue of whether the Board had jurisdiction to consider appellant's challenge to the reasonableness or enforceability of the actual, daily rate established by the parties in the task order, our decision recognized, as noted by the government, "that appellant's complaint does not address the reasonableness of the government's liquidated damages rate." *Id.* at 183,760. We noted also that "Board Rule 6(d) provides for amendment of pleadings 'upon conditions fair to both parties,'" and that, "[g]iven our decision here, appellant must decide what additional steps, if any, are necessary to properly tee up its affirmative defense for resolution in this appeal." *Id.* Our suggestion that appellant consider what steps, if any, were necessary to properly assert its affirmative defense, was stated in the context of the government's jurisdictional challenge to appellant's arguments regarding assessment of liquidated damages, which the government argued were not properly before us.

Subsequent to the issuance of our decision, appellant filed a separate motion seeking leave to file several affirmative defenses, including one challenging the reasonableness of the government's set daily rate. We address in a separate opinion the issues raised by appellant in its motion for leave filed pursuant to Board Rule 6(b), as well as the government's response in opposition to that motion, including whether we have jurisdiction to consider appellant's challenge to the reasonableness of the specific rate set forth in the task order.

III. *Appellant's Alleged Waiver of the Reasonableness and Enforceability of the Liquidated Damages Rate*

The government argues that appellant did not challenge *enforceability* of liquidated damages until the filing of its cross-motion for summary judgment (gov't mot. at 2). The government is mistaken. In its claim submitted to the contracting officer, appellant challenged the enforceability of liquidated damages, arguing that, because appellant had substantially completed the project, assessment of liquidated damages was improper. *Sauer*, 21-1 BCA ¶ 37,845 at 183,752. In briefing on the parties' cross-motions for summary judgment, appellant established, and the government did not dispute, that prior to the government's decision to impose liquidated damages, appellant had completed Phases I and II of the three-phase project, and that, according to the

3

contractor's calculations, Phase I alone accounted for 98 percent of the project work.[2] Based upon these and other undisputed facts, we granted partial summary judgment to appellant, finding "that the government has failed to reference sufficient evidence demonstrating that a reasonable fact finder could decide in favor of the government on the issue of substantial completion of Phases I and II." *Id.* at 183,756.

The government argues that appellant waived its right to challenge the reasonableness of the actual rate by failing to lodge a protest prior to award, stating "[i]f Sauer thought that the liquidated damages rate was unenforceable or unreasonable, it should have raised it prior to contract award" (gov't mot. at 8). In addition to respondent's jurisdictional argument that appellant's challenge to the enforceability or reasonableness of the liquidated damages rate is a new claim, in its motion for reconsideration, the government suggests that appellant waived that defense because it was not asserted in its complaint (*id.* at 6-7). The government states, "should the Board find, as it did in its April 16, 2021 decision, that Sauer's challenge to the enforceability and reasonableness of the liquidated damages rate is an affirmative defense that is permissible without submission of a claim to the contracting officer, Sauer has waived the assertion of that defense" (*id.* at 6). As discussed above, although our decision recognized the reasonableness of the liquidated damages rate as a potential affirmative defense, our decision did not decide whether we had jurisdiction to determine the reasonableness of the specific liquidated damages rate set forth in the task order.

Respondent cites our decision in *Trade West Construction, Inc.*, ASBCA No. 61068, 20-1 BCA ¶ 37,713 at 183,080, for the proposition that "[a] party may waive an affirmative defense by failing to assert it," and complains that our decision in *Trade West* "did not 'tee up its affirmative defense for resolution in th[e] appeal,' as it did for Sauer" (gov't mot. at 6-7). Respondent's reliance upon that decision is misplaced as the facts in that appeal present a quite different scenario than those presented here. *Trade West* concerned a contractor claim for additional costs based upon an alleged change to the contract requiring more work. At the Board, the government sought denial of the claim based upon several grounds, including appellant's alleged lack of notice pursuant

---

[2] Statement of Fact (SOF) ¶ 22 provides "that 98.7 percent of the total construction-related costs were placed in Phase I, construction of the new headquarters building." *Sauer*, 21-1 BCA ¶ 37,845 at 183,752 (citing app. Statement of Undisputed Material Facts No. 3; R4, tabs 3.03, 3.07; app. mot. at ex. 1). SOF ¶ 22 also stated that "[a]lthough the government 'denies' this allegation, it does not state why appellant's determination is incorrect. Rather, the government 'notes that the costs associated with the respective schedule activities were assigned by Sauer in its schedule, not determined by the government'" *Sauer*, 21-1 BCA ¶ 37,845 at 183,752 (citing gov't resp. to app. Statement of undisputed Material Facts No. 3).

to the Changes clause - an issue that has no application to a government claim for liquidated damages. *Trade West*, 20-1 BCA ¶ 37,713 at 183,080.[3]

We rejected the government's argument, detailing the many ways that the government was on notice of the contractor's changed-condition claim, despite the contractor submitting no formal notice to the government. *Id*. We found also that the government failed to offer any record evidence that it was prejudiced by the passage of time, and "[e]ven assuming appellant failed to provide the requisite Changes clause notice, the government waived any objection it may have had to appellant's claim based upon that lack of notice," because the contracting officer failed to raise the issue of lack of notice in the final decision as a basis for denying the claim, and the government failed to plead lack of notice as an affirmative defense. *Id*. The government's failure to address notice in its final decision or in its answer was additional evidence that the government was on notice of the claim, despite the lack of any formal notice required by the Changes clause. *Id*. That simply is not the situation here.

As stated above, we will address in a separate decision whether we have jurisdiction to consider the affirmative defense as to the reasonableness of the rate established by the task order.

IV. *Our Decision Properly Held that Assessment of Liquidated Damages was Improper Based Upon Completion of Phases I and II of the Task Order*

The government argues that we committed error when we "concluded, as a matter of law, that the LD rate is unenforceable" (gov't mot. at 2). According to the government, we erred in our "reading *Dick Pacific* as establishing a rule of law rather than resting its conclusion upon a factual finding," and that while we "concluded that the LD rate assessed in *Dick Pacific* was unenforceable in that case, the Board [in *Dick Pacific*] specifically rested that conclusion upon the factual finding that the 'daily rate bears no reasonable relation to the probable loss that would be incurred by the government after substantial completion of the first two contract items'" (*id*. at 10).

Our decision in *Dick Pacific* both recognized, and applied, a rule of law based upon factual findings, specifically that the daily liquidated damages rate set forth in the

---

[3] Respondent also suggests that "the situation is more problematic" because "this liquidated damages rate has been apparent to Sauer since January 12, 2011, when the Request for Proposals was issued, prior to contract award" (gov't mot. at 7). Other than note the passage of time, respondent does not allege, let alone establish, how the passage of time has prejudiced the government. Moreover, appellant here was not put on notice that the government was going to assess liquidated damages (where the contractor already had completed two phases of the Contract), until project work was mostly complete.

contract should be apportioned based upon substantial completion of certain portions of the project, as indicated by their warranty dates. *Dick Pacific*, 16-1 BCA ¶ 36,196 at 176,640. Our decision in this appeal applied that same rule of law to undisputed factual findings regarding completion of phases I and II of the task order. Specifically, we held that "[t]he government's assessment of the full amount of daily liquidated damages after substantial completion and acceptance of the first two phases is unenforceable." *Sauer*, 21-1 BCA ¶ 37,845 at 183,758. To be clear, the rule of law espoused in *Dick Pacific* applies equally to this appeal because, in both this appeal and in *Dick Pacific*, the "'daily rate bears no reasonable relation to the probable loss that would be incurred by the government after' substantial completion of the first two contract items." *Sauer*, 21-1 BCA ¶ 37,845 at 183,757 (quoting *Dick Pacific*, 16-1 BCA ¶ 36,196 at 176,641).[4]

The government argues also, that "[s]imply put, Sauer's claim for remission of liquidated damages was based solely on a disagreement with USACE about when substantial completion occurred, not the unreasonableness or unenforceability of the rate itself" (gov't mot. at 5). The government then concludes "[t]hus appropriately, the Contracting Officer's Final Decision (COFD) was limited to the allegations set forth in Sauer's claim, concluded that the government is entitlement [sic] to the liquidated damages assessed, and discussed when each phase of the three-phase project had been completed" (*id.*). As noted in our decision, however, the contracting officer's final decision failed completely to address the issue of substantial completion as raised by appellant in its claim. Indeed, we found that "[t]he contracting officer did not address appellant's argument that assessment of liquidated damages after substantial completion of the Project was inappropriate. Rather, the contracting officer assessed liquidated damages '[i]n accordance with FAR 52.211-12' based upon appellant's 'failure to complete the work within the contract duration' (R4, tab 2.02 at 7)." *Sauer*, 21-1 BCA ¶ 37,845 at 183,752 (SOF ¶ 25).

Respondent argues also that "contrary to the analysis required by the Federal Circuit, the Board did not analyze how the liquidated damage figure was arrived at, nor did it analyze whether the liquidated damages were reasonable at the time that the contract was awarded" (gov't mot. at 11 (citing *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1008)). The government's argument puts the cart before the horse, as our decision here did not turn on the reasonableness the liquidated damages rate, nor did we decide whether we had jurisdiction to consider that issue. Indeed, the government admits as much, stating that "based upon the limited factual findings reached at this stage, the Board could not have done so, as the question of whether an LD amount bears a reasonable relationship to the foreseeable actual damages suffered by delayed completion of the project is a question of fact, which the Board has not yet reached" (gov't mot. at 11-12).

---

[4] See also our discussion of *Dick Pacific* set forth in section V of this decision.

6

Notwithstanding its position that rate reasonableness was not, and could not be decided at this state of the litigation (a position with which we agree), the government's motion submits additional documentary information in an attempt to establish the reasonableness of the liquidated damages rate set forth in the contract, arguing that "[t]he reasonableness of the liquidated damages [rate] is evaluated at the time of contract formation" (gov't mot. at 12). As we already have held, however, "[o]ur decision on the parties' cross-motions for summary judgment turns not on the reasonableness of the liquidated damages rate as established by the government pre-award (nor are we able to decide that factual dispute on summary judgment), but, rather, on the government's failure to apportion its liquidated damages at the time it assessed those damages." *Sauer*, 21-1 BCA ¶ 37,845 at 183,759-60.

The government argues, that "without reaching a determination as to when the project was substantially completed, in the next section of the decision the Board held that the amount of liquidated damages assessed per day for this project must necessarily be reduced" (gov't mot. at 8-9). The government misreads our decision. Although, it accurately quotes a portion of our decision, stating "as to the issue of substantial completion of the Project vis-a-vis Phase III, we are constrained at this point in the litigation from making a determination whether it occurred on December 20, 2013, or at some point prior to that date," (*id.* at 8), there we were addressing only the issue of Phase III substantial completion.[5] Earlier in our decision, we had held, as admitted by the government, that Phases I and II were complete (indeed, not just substantially complete). *Sauer*, 21-1 BCA ¶ 37,845 at 183,757-58. The factual issue we were unable to reach concerned Phase III of the task order, which, according to appellant's calculations, comprised less than two percent of appellant's construction-related costs. *Sauer*, 21- 1 BCA ¶ 37,845 at 183,752 (*see* SOF ¶ 23).

As to the government's argument that the contract is not substantially complete because the government has not received all the benefits for which it contracted, those "benefits" relate solely to work performed in Phase III. The government is free to argue those benefits as they pertain to Phase III and the issue of substantial completion of that phase. The government argues also, "[b]ecause the Board cannot assess whether the parking lot is necessary for the government to achieve substantial completion, it is impossible, at this stage of the proceedings, for the Board to conclude that the LD rate assessed was unenforceable" (gov't mot. at 9). The government is incorrect. The liquidated damages rate is unenforceable as to Phases I and II. It may very well be enforceable as to Phase III, with an apportioned amount of the task order's specified rate properly assessed in the event Phase III was not substantially complete. Our decision

---

[5] Concerning Phase III, we held that factual issues remained regarding the extent of work left to be completed, such that we were unable to make a determination of substantial completion vis-a-vis that phase. *Sauer*, 21-1 BCA ¶ 37,845 at 183,757.

contains no determination as to what portion of the liquidated damages may properly be enforced. A determination as to substantial completion of Phase III first must be made.

V. *Our Decision Did Not Rewrite Contract Terms*

The government argues that our decision improperly rewrote terms of the contract (*id.* at 13-15). According to the government, our decision "recognized that the contract did not set a different liquidated damages rate for each phase of the contract, (Decision at 15), yet holds that the government 'should have' done so, and ultimately, rules as if the government did have phased liquidated damages" (*id.* at 14). As support, the government cites *George Hyman Const. Co. v. United States*, 832 F.2d 574, 581 (Fed. Cir. 1987), for the proposition that courts lack authority to re-write contracts and insert words into a contract to which the parties never agreed (gov't mot. at 14-15). The government misreads our decision, as we did not rewrite any terms of the contract. Rather we held that "[t]he government's assessment of the full amount of daily liquidated damages after substantial completion and acceptance of the first two phases is unenforceable." *Sauer*, 21-1 BCA ¶ 37,845 at 183,758.

The origin of appellant's critique arises out of an argument set forth in its motion for summary judgment, wherein the government cited *American Int'l Contractors, Inc.,* ASBCA Nos. 60948, 61166, 18-1 BCA ¶37,061, "as an example of when the government did not include separate liquidated damages rates for each phase of a contract, even though the FAR provides a contracting officer 'the authority to revise the liquidated damages clause to provide for different rates for separate parts of the work' (gov't reply at 15)." *Sauer*, 21-1 BCA ¶ 37,845 at 183,758. In responding to the government's argument, we found that the government's reliance upon *American Int'l Contractors* as support for its not including separate liquidated damages for each project phase was "misplaced, as the Board there did not reach the issue of whether the contracting officer should have exercised the authority set forth in FAR 11.503(b) and should have included different liquidated damages rates for each contract phase." *Id.*[6]

However, in distinguishing *American Int'l Contractors* from the current appeal, we did not thereby rewrite the liquidated damages clause to conform with the requirements of FAR 11.503(b). Rather, we stated that "the plain wording of that provision suggests that when the government issued RFP Revision No. 02 to provide for phased construction with corresponding completion dates, the government should have revised paragraph (a) of FAR 52.211-12 'to state the amount of liquidated damages for

---

[6] FAR 11.503(b) provides "[i]f the contract specifies more than one completion date for separate parts or stages of the work, revise paragraph (a) of the clause [FAR 52.211–12, LIQUIDATED DAMAGES—CONSTRUCTION] to state the amount of liquidated damages for delay of each separate part or stage of the work." 48 C.F.R. §11.503(b).

delay of each separate part or stage of the work,'" and "[t]he fact that the government did not follow FAR 11.503(b) here is yet an additional argument in favor of a finding that apportionment of the liquidated damages rate is appropriate in this appeal." *Id*.

Our decision that apportionment of the liquidated damages is appropriate in this appeal was based, not on *American Int'l Contractors* or the instructions set forth in FAR 11.503(b), but rather upon our precedent in *Dick Pacific*, and the well-established principle set forth in that decision which instructs "that liquidated damages may not be assessed past substantial completion." *Dick Pacific*, 16-1 BCA ¶ 36,196 at 176,640 (citing *Ellis Environmental Group, LLC*, ASBCA No. 55375, 08-2 BCA ¶ 33,918 at 167,847). Indeed, our decision in *Dick Pacific* did not involve any change to the actual rate amount set forth in the contract at time of award. Rather, in that decision we found that apportionment of the rate was appropriate based upon substantial completion of two of the three project phases, noting that "[a]ll of the information needed to apportion the liquidated damages was available during the formation process," specifically the percentage of the contract price as it pertained to each phase. *Dick Pacific*, 16-1 BCA ¶ 36,196 at 176,640. Accordingly, in *Dick Pacific*, we instructed that "[i]n the quantum proceeding the parties may apply these [percentage] rates using the substantial completion dates." *Id.* at 176,641. We held that "[t]he $2,298 daily rate bears no reasonable relation to the probable loss that would be incurred by the government after the Rev B Infield and Strat Ramp are substantially complete," and that "allowing the daily rate of $2,298 to run after the Rev B Infield and Strat Ramp are substantially complete results in a penalty." *Id*. We held also that "assessing the full amount of daily liquidated damages after substantial completion of the Rev B Infield and Strat Ramp is unenforceable." *Id.*[7]

Our holding in *Dick Pacific* applies equally to this appeal. The project here likewise was divided into three phases, yet the task order specified only one liquidated damages rate. In our decision, we noted that "[a]lthough the issue of substantial completion is a question of fact, the record establishes beyond cavil that at the very least appellant substantially completed Phases I and II, given that the government admits Phases I and II were complete." *Sauer*, 21-1 BCA ¶ 37,845 at 183,757-58. We noted also it was undisputed that appellant completed the first two phases prior to the task order's deadline for completion of the project, with only Phase III remaining. *Sauer*, 21-1 BCA ¶ 37,845 at 183,751. Here, as in *Dick Pacific*, the daily rate specified in the task order "bears no reasonable relation to the probable loss that would be incurred by the government after" Phases I and II "are substantially complete," and "allowing the daily rate . . . to run after" Phases I and II "are substantially complete results in a penalty."

---

[7] *Dick Pacific* involved extension of existing airfield and pavement, and construction of a clear water rinse facility (CWRF), with the project divided into three construction phases - an Infield Ramp Rev B (Rev B Infield), an Airlift/Strat Ramp Expansion (Strat Ramp), and the CWRF. 16-1 BCA ¶ 36,196 at 176,603-06.

*Dick Pacific*, 16-1 BCA ¶ 36,196 at 176,641. As with our decision in *Dick Pacific*, our decision here was based upon unrefuted facts establishing that the vast portion of the phased task order work already had been completed.

The government challenges our holding, suggesting that completion of the parking lots somehow justifies imposition of the entire amount of liquidated damages because "the Project was not substantially complete without a parking lot" (gov't mot. at 9). The actual amount of liquidated damages properly assessed waits to be determined. The government still has the ability to argue the importance of the parking lots going forward in determining the proper amount of liquidated damages. However, as we already have held, "[t]he government's assessment of the full amount of daily liquidated damages after substantial completion and acceptance of the first two phases is unenforceable." *Sauer*, 21-1 BCA ¶ 37,845 at 183,758.

CONCLUSION

For the reasons stated above, the government's motion for reconsideration is denied.

Dated: March 2, 2022

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62395, Appeal of Sauer Incorporated, rendered in conformance with the Board's Charter.

Dated:  March 3, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals